UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HPS MECHANICAL, INC.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>JMR CONSTRUCTION CORP., et al.,<br><br>　　　　Defendants. | Case No. 11-cv-02600-JCS<br><br>**ORDER DENYING DEFENDANTS'**<br>**MOTION FOR PARTIAL SUMMARY**<br>**JUDGMENT**<br><br>**Dkt. No. 95** |

## I.  INTRODUCTION

Plaintiff HPS Mechanical (hereafter, "HPS"), a subcontractor on a federal construction project, filed this action under the Miller Act, 40 U.S.C. §§ 3131-3134, against the prime contractor JMR Construction Corporation (hereafter, "JMR") and its surety, Great American Insurance Company, seeking to recover $675,843.72 on the Miller Act payment bond.  JMR filed a Motion for Partial Summary Judgment (hereafter, "Motion") to preclude liability for the $327,291.00 which HPS already sought from the owner, the United States Army Core of Engineers, through its submission of change order requests and a certified claim, notwithstanding the fact HPS has not recovered that sum.  In the alternative, JMR contends that it is not liable for an unspecified amount that was claimed on or before August 31, 2009, the last date HPS executed a conditional release of its bond rights.  The Court held a hearing on the Motion on November 1, 2013, at 9:30 a.m.  For the reasons stated below, the Motion is DENIED.[1]

//

//

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

## II. BACKGROUND

### A. Factual Background[2]

#### 1. *The Miller Act Payment Bond*

The United States Army Core of Engineers (hereafter, "the Corps") contracted with JMR to be the prime contractor of an overall project which included the construction of the Sam Ramon Valley Recycled Water Project – Pump Station R200A and Pipeline (hereafter, the "Project"). Joint Statement of Uncontroverted Facts ("JSUF") ¶ 1. *Id*. Before JMR could be awarded a contract for a federal works project valued over $100,000, JMR was required to obtain a payment bond under the Miller Act "for the protection of all person supplying labor and material in carrying out the work provided for in the contract" between the Corps and JMR. 40 U.S.C. § 3131(b)(2). The amount of the payment bond is required to "equal the total amount payable by the terms of the contract unless" excused by the government. *Id*. § 3131(b)(2). The payment bond becomes binding after the contract is awarded. *Id*. § 3131(b). JMR obtained a Miller Act payment bond with its surety, Great American Insurance Company.[3]

#### 2. *The Subcontract*

In June of 2008, JMR executed a subcontract with HPS (hereafter, the "Subcontract") for HPS to construct the Project in exchange for an initial agreed-upon amount of $1,293,130.00. JSUF ¶ 2; Declaration of Ronald Rivard in Support of JMR's Motion for Partial Summary Judgment ("Rivard Decl."), Ex. 2 ("Subcontract"). The parties discuss several provisions of the Subcontract in their briefing, which the Court reviews briefly.

Article 8 of the Subcontract governs changes in subcontract work. Section 8.1 provides that any changes to the Subcontract "shall be by a written Change Order setting forth in detail the changes involved and the value of such which shall be mutually agreed upon between Contractor and the Subcontractor." Subcontract at 20. Section 8.3 states that the Subcontractor will be "responsible for any costs incurred by the Contractor for changes of any kind made by the

---

[2] Unless otherwise noted, the Court describes facts which were either stipulated to be undisputed, or which the Court otherwise found to be undisputed.

[3] While neither party has submitted the Miller Act payment to the Court, the fact that JMR obtained a Miller Act payment bond is not disputed.

2

Subcontractor that increase the cost of the Work … when the Subcontractor proceeds with such changes without a Change Order or Construction Change Directive." *Id*.

The validity of § 8.4 is disputed by the parties; it provides that when the owner/Corps rejects a change order request, the contractor/JMR is not liable to the subcontractor/HPS for the change order:

> **8.4 Determination by Owner or Architect/Engineer.**
> Notwithstanding any other provision, if the Subcontract Work for which the Subcontractor claims additional compensation is determined by the Owner or Architect/Engineer not to entitle the Contractor to a Change Order, additional compensation or a time extension because such work is within the scope of the Subcontract Work as defined by Paragraph 3.1, then the Contractor shall not be liable to the Subcontractor for any additional compensation or time extension for such Subcontract Work, unless the Contractor agrees in writing to pay such additional compensation or to grant such extension.

Subcontract at 20.

Article 6 of the Subcontract governs the "Schedule of Subcontract Work" and includes § 6.5, which governs "Delays and Time Extensions." Subcontract a 14. The interpretation of § 6.5.4 is disputed by the parties; it provides:

> **6.5.4 Claims Relating to Contractor.** The Subcontractor shall give the Contractor written notice of all claims not included in Subparagraph 6.5.2 within seven (7) calendar days of the occurrence of the event giving rise to the event for which the claim is made; otherwise, such claims shall be deemed waived. All unresolved claims, disputes and other matters in question between the Contractor and the Subcontractor not relating to claims included in Subparagraph 6.5.2 shall be resolved in the manner provided in Article 11.

Subcontract at 15. Under § 6.5.4, HPS was required to give JMR "written notice of all claims not included in Subparagraph 6.5.2" within seven calendar days of the triggering event. *Id*.

Section 6.5.2 is entitled "Claims Relating to Owner" and applies to "all claims for which the Owner … is or may be liable…." *Id*. at 14. Section 6.5.2 requires the subcontractor/HPS to provide notice of such claims to the contractor/JMR in time for JMR to submit such claims to the owner/Corps. *Id*. It also provides that "[a]t the Subcontractor's request and expense, to the extent

3

agreed upon in writing, the Contractor agrees to permit the Subcontractor to prosecute a claim in the name of the Contractor for the use and benefit of the Subcontractor….” *Id*. at 15.  In addition, § 6.5.2 provides that "no claim, dispute or controversy shall interfere with the progress and performance of work required to be performed under this Subcontract and that Subcontractor shall proceed as directed by Contractor in all instances with its work under the Subcontract…." *Id*.

### 3. *Change Order Requests*

During the course of the Project, HPS submitted multiple change order requests to JMR. JSUF ¶ 3.  JMR, in turn, submitted HPS's change order requests to the Corps, which included an additional mark-up JMR overhead and profit.  *Id*.  The Corps approved HPS's change order requests (submitted by JMR) in the total amount of $121,695.00.  Rivard Decl. ¶ 8.  When the Corps approved a change order request from HPS, it provided JMR with a contract change order, and JMR, in turn, provided HPS with a subcontract change order.  JSUF ¶ 5.

The Corps did not approve all of HPS's change order requests.  JSUF ¶ 4.  The amount not approved by the Corps totals $327,291.00.  JSUF ¶ 6; *see also* Rivard Decl. Ex. 4.  When the Corps did not approve one of HPS's change order requests, JMR did not provide HPS with a subcontract change order.

In 2011, near the end of the Project, JMR submitted a final certified claim to the Corps seeking approval of multiple change orders.  JSUF ¶ 7.  This certified claim is called a Request for Equitable Adjustment (hereinafter, "REA").  *Id*.  HPS's unapproved change requests in the amount of $327,291.00 were included within JMR's REA.  *Id*.

To include the $327,291.00 in JMR's REA, HPS executed a claim certification.  JSUF ¶ 8. The certified claim was executed by Kenny Pourroy on October 17, 2011, and states:

> I certify that the claim of HPS Mechanical, Inc., in the amount of $327,291.00 is made in good faith; that the supporting data are accurate and complete to the best of my knowledge and belief; that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable; and that I am duly authorized to certify the claim on behalf of the contractor.

Rivard Decl. and Ex. 2 thereto.  At the time HPS executed the certified claim, HPS had already filed this lawsuit.  Declaration of Kenny Pourroy in Support of Opposition to Motion for Partial

4

Summary Judgment ("Pourroy Decl.") ¶ 6.

JMR and the Corps negotiated a settlement of the REA. JSUF ¶ 11. In the Corps' review and negotiation of JMR's certified claim, it did not change its position on most of HPS's change order requests that it had previously denied, but did approve a total of $12,644.14 related to HPS's change order requests. Rivard Decl. ¶ 11, Ex. 4. The Corps issued a final change order to JMR resulting from the REA settlement. JSUF ¶ 13. HPS was not a participant in the REA settlement discussions. *Id*. ¶ 12.

### 4.  *Conditional Releases*

Throughout the Project, JMR received progress payments from the Corps, and, in turn, made some progress payments to HPS. JSUF ¶ 9. When JMR made a progress payment to HPS, HPS executed conditional releases and waiver forms pursuant to California Civil Code § 3262. *Id*. Each release provides:

> This release covers a progress payment for labor, services, equipment, or material furnished to JMR Construction through [the date of execution for the release] only and does not cover any retentions retained before or after the release date; extras furnished before the release date for which payment has not been received; extras or items furnished after the release date. Rights based upon work performed or items furnished under a written change order which has been fully executed by the parties prior to the release date are covered by this release unless specifically reserved by the claimant in this release.

Rivard Decl. Ex. 6. The last of these releases is dated August 31, 2009. Rivard Decl. Ex. 6.

### B.  The Complaint

HPS filed this action under the Miller Act, 40 U.S.C. §§ 3131-34. Section 3133(b) of the Miller Act provides:

> Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought

>and may prosecute the action to final execution and judgment for the amount due.

40 U.S.C. § 3133(b).  The action "must be brought no later than one year after the day on which the last of the labor was performed or material was supplied by the person bringing the action." *Id*. § 3133(b)(4).

In the Complaint, HPS alleged that it had provided labor and services to JMR for the Project, but had not yet been paid $675,843.72 for its provision of such labor and services. Compl. ¶¶ 10,12.  HPS alleged that ninety days had elapsed since it last provided such labor and materials, which HPS alleges was July 9, 2010.  *Id*. ¶¶ 9, 14.  Moreover, HPS filed the Complaint on June 1, 2011, less than one year after July 9, 2010.

### C. JMR's Motion for Partial Summary Judgment

In its Motion, JMR argues that HPS is not entitled to recover the $327,291.00 that HPS already sought from the Corps through its submission of change order requests and a certified claim, and further argues that HPS may not recover from JMR any amount that was due before August 31, 2009, the last day in which HPS executed a conditional release.  Dkt. No. 96 (Points and Authorities in Support of JMR Const. Corp Motion for Partial Summary Adjudication) ("Motion PSJ").  JMR presents three main arguments, the first two of which relate to the change order requests.

First, JMR contends that under the Subcontract, HPS is precluded from recovering from JMR the $327,291.00 that HPS already sought from the Corps by submitting a certified claim. JMR contends that under § 6.5.4 of the Subcontract, HPS has waived its ability to recover this money from JMR by failing to provide "separate written notice" that it would seek recover under the payment bond.   JMR also argues that under § 8.4 of the Subcontract, JMR is not liable for any change order request that has been rejected by the Corps.  Moreover, JMR argues that by submitting the certified claim, HPS took a position that the Corps was liable for this amount, and should be equitably estopped from now asserting that JMR is liable.

Second, JMR contends that the doctrine of judicial estoppel should preclude HPS's recovery of the $327,291.00 included in a certified claim submitted to the Corps.  JMR contends

6

that because HPS executed a certified claim under the Federal Acquisition Regulation ("FAR") and Contract Disputes Act of 1978 ("CDA"), HPS effectively declared under oath that the Corps is liable for this amount, and should be judicially estopped from now asserting that JMR is liable for this amount.

Third, JMR contends that because HPS executed a series of releases under California Civil Code § 3262, HPS forfeited all bond rights, and released JMR from all liability, for all change order requests submitted on or before August 31, 2009, the date of execution for the last release signed by HPS.

### III. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). In order to prevail, a party moving for summary judgment must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim, or to a defense on which the non-moving party will bear the burden of persuasion at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this showing, the burden then shifts to the party opposing summary judgment to designate "specific facts showing there is a genuine issue for trial." *Celotex*, 477 U.S. at 324. On summary judgment, the court draws all reasonable factual inferences in favor of the non-movant. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 255 (1986).

### IV. DISCUSSION

This case was brought under the Miller Act, 40 U.S.C. § 3131-34, which creates a cause of action in favor of "[e]very person who has furnished labor or material in the prosecution of the work provided for in the contract for which a [Miller Act] payment bond is furnished…." 40 U.S.C. § 3133(b)(1). "The Miller Act requires a general contractor on a federal construction project to furnish a payment bond for the protection of all persons supplying labor and material in the prosecution of work provided for in the contract." *United States for the Use and Benefit of Walton Technology v. Westar Engineering*, 290 F.3d 1199, 1205 (9th Cir. 2002) ("*Walton*") (quotations and alterations omitted); *see also* 40 U.S.C. § 3131(b)(2). "The Miller Act represents

7

a congressional effort to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protection they might receive under state statutes with respect to the construction of nonfederal buildings." *U.S. for Benefit & on Behalf of Sherman v. Carter*, 353 U.S. 210, 216 (1957). "Because the Act is highly remedial in nature, it must be liberally construed to effectuate Congress's intent." *Mai Steel Serv. Inc. v. Blake Constr. Co.*, 981 F.2d 414, 417 (9th Cir. 1992) ("*Mai*")).

In the Complaint, HPS seeks to recover $675,843.72 from the Miller Act payment bond. Compl. ¶¶ 10-12. Defendants have moved for summary judgment to preclude liability of $327,291.00, which reflects the total amount of HPS's unapproved and unpaid change order requests. Whether HPS is entitled to recover, under the Miller Act payment bond, the amount of a change order request or any portion thereof, depends on whether the compensation claimed in the change order reflects HPS's cost of "furnish[ing] labor or material in the prosecution of the work provided for in the contract…." 40 U.S.C § 3133(b)(1). The parties have failed to provide any explanation of the change order requests for the Court to be able to determine whether they cover costs that falls within the scope of the Miller Act. For this reason, the Motion for Partial Summary Judgment is denied.

To determine whether the work reflected in a change order request falls within the scope of the Miller Act, the Court must look to the authoritative case law interpreting the Miller Act. In *Mai*, the Ninth Circuit considered whether a subcontractor is entitled to recover its "increased labor and material costs caused by construction delays" under a Miller Act payment bond. *Mai*, 981 F.2d at 417. Following the lead of three other circuit courts, the Ninth Circuit held that a subcontractor could recover for "increased labor and material costs, but not for the subcontractor's lost profits caused by the delay." *Id*. (citing *United States ex rel. Lochridge–Priest, Inc. v. Con–Real Support Group, Inc.*, 950 F.2d 284 (5th Cir. 1992); *United States ex rel. T.M.S. Mechanical Contractors, Inc. v. Millers Mutual Fire Ins. Co. of Texas*, 942 F.2d 946 (5th Cir. 1991); *United States ex rel. Pertun Constr. Co. v. Harvesters Group, Inc.*, 918 F.2d 915 (11th Cir. 1990); *United States ex rel. Heller Elec. Co. v. William F. Klingensmith, Inc.*, 670 F.2d 1227 (D.C. Cir. 1982)). The *Mai* court quoted the Eleventh Circuit in *Pertun*:

> Only by allowing a full recovery of these costs, including those portions caused by delay, can the purpose of the statute—to afford the subcontractor the financial protection of an action against the surety—be achieved.

*Mai*, 981 F.2d at 417 (quoting *Pertun Const. Co.*, 918 F.2d at 918). The *Mai* court emphasized that only delay "costs" are recoverable; lost profits caused by a delay are not recoverable under the Miller Act:

> We hold that increased out-of-pocket costs caused by construction delays fall within the intended coverage of the Miller Act. Thus, a subcontractor may recover these costs from a Miller Act surety. A subcontract may not recover from the surety, however, any lost profits caused by the delay.

*Mai*, 981 F.2d at 418; *see also Millers Mutual*, 942 F.2d at 952 (rental value of subcontractor's equipment sitting idle due to delay constituted lost profits, and thus were not recoverable under a Miller Act payment bond).

The *Mai* court also held that recovery of the costs for labor and material was not "limited to situations in which the delay was *caused* by the general contractor." *Mai*, 981 F.2d at 417 (emphasis added). The court held that under the Miller Act, recovery did not require a showing that the general contractor was at fault:

> Allowing a subcontractor to recover delay costs even when the general contractor is not at fault is consistent with the overall remedial purpose of the Miller Act. The Miller Act was designed to protect subcontractors and suppliers who provide labor and materials to public projects. *See, e.g., Sherman*, 353 U.S. at 216, 77 S.Ct. at 796. Absent an indication from Congress to the contrary, there is no sound reason to require a finding of fault on the part of the general contractor as a prerequisite for recovery under the Miller Act.

*Mai*, 981 F.2d at 419; *see also Lighting & Power Servs., Inc. v. Roberts*, 354 F.3d 817, 821 (8th Cir. 2004) ("We hold that the Miller Act does not require that the general contractor be at fault in order for the subcontractor to recover on the Miller Act payment bond.").

The *Mai* court also referenced limited circumstances in which the Miller Act would *not* cover a subcontractor's recovery of the costs of delay. For instance, a subcontractor may not recover delay costs under a Miller Act payment bond when the subcontract is at fault for the delay.

9

*Mai*, 981 F.2d at 419 n. 8 ("There may be instances when recovery would be inappropriate, such as when the delay is attributable to the subcontractor's own conduct."); *Millers Mutual*, 942 F.2d at 954 n. 14 ("A subcontractor cannot recover from a Miller Act surety for additional or increased costs caused by its own delay."). Moreover, the *Mai* court cited with approval the Ninth Circuit's previous decision in *McDaniel v. Ashton-Mardian Company*, 357 F.2d 511 (9th Cir. 1966), where the subcontractor was not entitled to recover delay damages under the Miller Act because:

> (1) the subcontractor was notified before entering into the contract that frequent delays were likely, and (2) it was clear that the parties "did not intend their subcontract to mean that [the subcontractor] could recover damages from [the general contractor] for delays occasioned by proper change orders of the [government].

*Mai*, 981 F.2d 414, 420 (9th Cir. 1992) (citing *Ashton-Mardian Company*, 357 F.2d at 516).

In its briefing, JMR ignores the binding authority above, and instead largely bases its Motion for Partial Summary Judgment on certain provisions in the Subcontract. The terms of the Subcontract, however, must be interpreted in light of the foregoing principles interpreting the scope of the Miller Act. *Walton*, 290 F.3d at 1206 (quoting *Mai*, 981 F.2d at 417) ("the subcontractor's ability to recover did not hinge either on the cause of the delay or the terms of the underlying contract," but rather "depended entirely on whether the claim fell within the language of [the Miller … Act] interpreted in light of its prospective purpose") (quotations and alterations omitted). Accordingly, the Court interprets the Subcontract provisions cited by JMR in light of the protections accorded under the Miller Act.

JMR argues that § 8.4 of the Subcontract bars HPS from recovering any amount from the payment bond that was included in the change order requests that were denied by the Corps. Section 8.4 provides:

> **8.4 Determination by Owner or Architect/Engineer.**
> Notwithstanding any other provision, if the Subcontract Work for which the Subcontractor claims additional compensation is determined by the Owner or Architect/Engineer not to entitle the Contractor to a Change Order, additional compensation or a time extension because such work is within the scope of the Subcontract Work as defined by Paragraph 3.1, then the Contractor shall not be liable to the Subcontractor for any additional compensation or time extension for such Subcontract Work, unless the Contractor agrees

10

in writing to pay such additional compensation or to grant such extension.

Subcontract at 20. Section 8.4 states that JMR does not have to pay HPS for the amount of a change order request unless the Corps first pays JMR.

The parties dispute the validity of § 8.4. HPS contends that § 8.4 is a classic "pay if paid" clause, and notes that the California Supreme Court has also held that "pay if paid" provisions are invalid because they violate public policy. *See WM. R. Clarke Corp. v. Safeco Ins. Co. of Am.*, 15 Cal.4th 882, 886 (1997) ("We conclude that pay if paid provisions … are contrary to the public policy of this state and therefore unenforceable because they effect an impermissible indirect waiver of forfeiture of the subcontractors' constitutionally protected mechanic's lien rights in the event of nonpayment by the owner."). In *Clark Corporation*, however, the "pay if pay" clause exempted the contractor from paying the subcontractor for work performed *under the contract*, and was used to exempt the contractor from liability in the event the owner became insolvent. *Id.* at 886; *see also Walton*, 290 F.3d at 1206.

In this case, whether § 8.4 bars HPS from recovering the amount in a change order request depends on whether the change order request, or some portion thereof, reflects costs of work that is within the scope of the Miller Act (as interpreted by authoritative case law discussed above). This, in turn, depends on whether the costs are for "furnish[ing] labor and material in carrying out work provided for in a contract…." 40 U.S.C. § 3133(b)(1). On the one hand, if a change order request does not reflect costs of work within the scope of the contract, then there is no cause of action under the Miller Act. In that circumstance, § 8.4 would bar payment for any change order request that was not approved by the government. Such a bar would not be a "pay if paid" clause invalid under the Miller Act because the Miller Act only forbids terms that purport to bar Miller Act remedies−payment for work done within the scope of the contract. *See Walton*, 290 F.3d at 1206. The Miller Act says nothing about work done outside the scope of the contract.

On the other hand, if a change order request seeks payment of costs for work already within the scope of the contract (including, as a matter of law, delay not attributable to the subcontractor) then HPS has a Miller Act claim to such costs. To the extent § 8.4 would bar payment for such costs, it must contain a "clear and explicit" waiver of HPS's Miller Act rights.

11

It does not, however, because § 8.4 "does not identify any rights that [HPS] may have under the Miller Act payment bond" and "is not even framed as a release or a waiver of claims." *Id*. at 1209.

The Court applies the same reasoning to JMR's arguments regarding § 6.5.4, which provides: "The Subcontractor shall give the Contractor written notice of all claims not included in Subparagraph 6.5.2 within seven (7) calendar days of the occurrence of the event giving rise to the event for which claim is made; otherwise, such claims *shall be deemed waived*." Subcontract at 15 (emphasis added). If HPS failed to provide JMR with written notice of a claim against JMR, *and that claim falls within the scope of the Miller Act*, then HPS may recover under the Miller Act payment bond despite its failure to comply with § 6.5.4's notice provision. This is because the waiver in § 6.5.4 does not identify any of HPS's Miller Act rights that will be waived, and therefore, is not a "clear and explicit" waiver of rights under the Miller Act. *Walton*, 290 F.3d at 1209. Moreover, the Miller Act expressly requires that any waiver of one's rights be "executed *after* the person whose right is waived has furnished labor or material for use in performance of the contract." 40 U.S.C. § 3133(c)(3) (emphasis added). The Subcontract was signed by HPS in June of 2008, *before* HPS furnished labor or materials in performance of the contract. Compl. ¶ 2. Section 6.5.4 therefore cannot operate to waive Miller Act claims. *See* 40 U.S.C. § 3133(c)(3).

On the other hand, if a change order request is for work beyond the scope of the contract (again, with delay not caused by the subcontractor considered by law to be within the contract), § 6.5.4 operates to waive such claims unless prior notice was given.

Here, of course, the applicability of the Miller Act depends on defining the scope of contract−and whether the "change" order requests actually were a change in the scope of the work done. Case law holds that costs of delay not attributable to the subcontractor are within the contract. In all events, determination of this issue requires a change order by change order analysis. No party has briefed or presented evidence on this issue. Summary judgment on the basis of § 8.4 and § 6.5.4 must therefore be denied.

JMR's arguments relating to equitable and judicial estoppel are also without merit. "Equitable estoppel focuses on the relationship between the parties and is designed to protect

litigants from injury caused by less than scrupulous opponents." *Jackson v. Cnty. of Los Angeles*, 60 Cal.App.4th 171, 183 (1997). The doctrine requires a showing of at least four elements: "(1) the party to be estopped must be apprised of the facts; (2) that party must intend that his or her conduct be acted on, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; and (4) the party asserting the estoppel must reasonably rely on the conduct to his or her injury." *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1051-52 (9th Cir. 2008) (quoting *Honig v. San Francisco Planning Dep't,* 127 Cal.App.4th 520, 529 (2005)).

JMR fails to specifically address the elements of equitable estoppel. JMR has not shown that it was ignorant of any facts which HPS knew, that HPS intended JMR to rely on its conduct, or that JMR relied on HPS's conduct to its detriment. *Lukovsky*, 535 F.3d at 1051-52. Indeed, evidence in the record shows that HPS executed the certified claim for JMR's REA after filing this lawsuit, and expressly reserved its right to recover the full amount claimed in the Complaint. *See* Potter Decl. ¶ 4 and Ex. 1. In any event, JMR's subjective belief that HPS would not seek to recover under the Miller Act payment bond falls short of "reasonable reliance" to one's detriment required for equitable estoppel.

JMR similarly fails to support its judicial estoppel defense with applicable case law or evidence in the record. The policy underlying judicial estoppel, as opposed to equitable estoppel, is the consideration "of the orderly administration of justice and regard for the dignity of judicial proceedings.... Judicial estoppel is intended to protect against a litigant playing fast and loose with the courts." *Jackson* , 60 Cal.App. 4th at 181. Judicial estoppel requires that the following elements be met: "(1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of ignorance, fraud, or mistake." *Id*. at 183.

JMR has failed to satisfy any element of its judicial estoppel defense. First, JMR fails to show that HPS ever took two inconsistent positions. The fact that HPS sought recovery of

$327,291.00 from the Corps in the first instance is not inconsistent with HPS's current pursuit of that same $327,291.00 from the Miller Act payment bond, given the fact the Corps never reimbursed HPS for that sum. Indeed, Plaintiff can recover under the Miller Act for costs of delay even if the delay is not the fault of the contractor, but rather is the fault of the Corps. *Mai*, 981 F.2d at 417. Second, JMR fails to show that HPS ever took any position in a prior judicial or quasi-judicial proceeding. JMR assumes, without any legal authority, that HPS's execution of a certified claim under oath is equivalent to a judicial or quasi-judicial proceeding. This assumption is incorrect. HPS never participated in a prior judicial or quasi-judicial proceeding. JMR settled its REA with the Corps, and the settlement released the Corps of all liability to JMR, and consequently, HPS. Finally, JMR can hardly argue that HPS was ever "successful" in taking any previous position when the Corps denied HPS's change order requests in the amount of $327,291.00. Accordingly, JMR cannot prevail on its judicial estoppel defense.

As a final matter, the Court addresses JMR's argument that HPS released all rights to recover under the Miller Act payment bond up for claims asserted on or before August 31, 2009, the latest date of HPS's execution of a conditional release. The language of the releases executed by HPS does not support JMR's contention. Each release expressly provides that it only "covers a progress payment" through the date of the release, and "does not cover any … extras furnished before the release date for which payment has not been received" or any "extras or items furnished after the release date." Rivard Decl. Ex. 6. Accordingly, HPS's claims for the amount of *extra* labor and materials provided for the Project falls outside the scope of these releases.

Nor is JMR correct to argue that HPS was required to expressly reserve its claims relating to the change order requests. Each release provides: "Rights based upon work performed or items furnished under a written change order which has been *fully executed* by the parties prior to the release date are covered by this release unless specifically reserved by the claimant in this release." *Id*. (emphasis added). Because the Corps denied HPS's change order requests in the amount of $327,291.00, these change order requests never became "fully executed" change orders. Therefore, HPS was not required to specifically reserve such claims in the release.

**V. CONCLUSION**

For the foregoing reasons, JMR's Motion for Partial Summary Judgment is DENIED.

**IT IS SO ORDERED**.

Dated: November 6, 2013

JOSEPH C. SPERO
United States Magistrate Judge

15