UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HPS MECHANICAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> JMR CONSTRUCTION CORP., et al., <br><br> Defendants. | Case No. 11-cv-02600-JCS <br><br> **ORDER GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND DENYING DEFENDANTS' MOTION FOR ATTORNEYS' FEES** <br><br> Re: Dkt. Nos. 168, 171 |

## I. INTRODUCTION

This Miller Act case arises from a construction subcontract (the "Subcontract") for a water infrastructure project in San Ramon, California. Plaintiff HPS Mechanical, Inc. ("HPS"), a subcontractor, claimed that Defendant JMR Construction Corporation ("JMR"), the general contractor, improperly withheld payment and failed to compensate HPS for changed circumstances. HPS also sued JMR's surety, Defendant Great American Insurance Company ("GAIC"). JMR[1] counterclaimed for expenses and delay allegedly caused by HPS's breach of the Subcontract. The Court held a bench trial in February of 2014, found each party entitled to recover a portion of its claims, and entered judgment in favor of HPS, with both Defendants jointly and severally liable for $120,094.32 and GAIC severally liable for an additional $11,859.00.

Both HPS and JMR, each claiming to be the "prevailing party," now move to recover their attorneys' fees pursuant to the Subcontract and California Civil Code section 1717. The Court previously found this issue suitable for resolution without oral argument and vacated the hearing scheduled to occur on December 12, 2014. *See* dkt. 181; Civ. L.R. 7-1(b). For the reasons stated

---
[1] This Order refers to both Defendants collectively as "JMR" except where discussing GAIC's individual liability.

1  below, HPS's Motion is GRANTED and JMR's Motion is DENIED. The Court awards HPS its
2  attorneys' fees in full, in the amount of $454,525. The Clerk's taxation of costs in favor of HPS
3  (dkt. 179) stands.[2]

## II. BACKGROUND

This Order assumes the parties' familiarity with the facts of the case, which are set forth in more detail in the Court's Findings of Fact and Conclusions of Law ("FFCL," dkt. 156).[3] In brief, this case arises from a U.S. Army Corps of Engineers ("USACE") project to build a pumping station and pipeline in San Ramon, California (the "Project"). The USACE contracted with JMR to complete the Project, and JMR subcontracted with HPS to complete certain aspects of it (the "Subcontract"),[4] including much of the work on the pipeline. The Project faced numerous setbacks and delays, and ultimately finished years behind schedule. At the conclusion of the Project, JMR entered negotiations with the USACE regarding a Request for Equitable Adjustment and was able to reach a settlement with the USACE.

HPS filed this action against JMR and GAIC to recover payment that JMR had withheld based on the counterclaims discussed below, and to bring claims based on a number of Proposed Change Orders ("PCOs") that HPS had submitted for increased costs and expenses that HPS contended were outside of its control. JMR filed a counterclaim for "backcharges"—costs and expenses that JMR purportedly incurred due HPS's improper acts and omissions—and for compensation that JMR claims it would have received from the USACE but for project delays attributable to HPS. The Court held a bench trial on February 19, 20, 24, and 25, 2014, and, after extensive post-trial briefing, issued its FFCL on August 1, 2014. HPS was entitled to recover $344,294.72 of $576,498.38 that it sought at trial:[5] $325,508.72 for the withholding and

---

[2] All parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).
[3] *HPS Mech., Inc. v. JMR Constr. Corp.*, No. 11-cv-02600-JCS, 2014 WL 3845176 (N.D. Cal. Aug. 1, 2014).
[4] The Subcontract was introduced at trial as Exhibit 328. Because it was also filed in connection with an earlier motion for summary judgment, it is available in the public record at ECF docket number 97-2.
[5] The values of the parties' claims listed here are based on their post-trial positions detailed in the FFCL. HPS initially claimed $675,843.72, but conceded several of its PCO claims. *See* Compl. (dkt. 1) ¶ 12; FFCL at 18.

1   $18,786.00 for the PCOs. *See* FFCL at 18, 25, 59. JMR was entitled to recover $212,341.40 of
2   the $401,517.03 that it sought for its backcharge claims, and nothing for its $341,062.00 delay
3   claim. *See id.* at 18−19, 59. Offsetting these amounts and taking into account the liability
4   applicable to each defendant, the Court judged JMR and GAIC jointly and severally liable to HPS
5   in the amount of $120,094.32, and GAIC severally liable for an additional $11,859.00. *Id.* at 60;
6   Judgment (dkt. 157).

Both parties now move for attorneys' fees. *See generally* JMR Mot. (dkt. 168); HPS Mot. (dkt. 171). Each party contends that it is the "prevailing party" for the purposes of section 11.5 of the Subcontract and section 1717 of the California Civil Code. JMR Mot. at 5−11; HPS Mot. at 2−8. JMR also presents two alternative arguments. First, JMR argues that it is entitled to attorneys' fees regardless of whether it "prevailed," citing two other sections of the Subcontract. JMR Mot. at 3−5. Less optimistically, JMR argues that if the Court does not award fees to JMR, the parties should bear their own fees and costs. *Id.* at 11−13.

### III.   ANALYSIS

#### A.   Fees Are Governed by Section 11.5 of the Subcontract and California Civil Code Section 1717

Section 11.5 of the Subcontract, titled "Cost of Dispute Resolution," provides that the "prevailing party in any dispute arising out of or relating to [the Subcontract] or its breach . . . shall be entitled to recover from the other party . . . reasonable attorneys' fees," so long as the method of dispute resolution is consistent with the terms of the Subcontract. Subcontract § 11.5. Neither party contends that this litigation was an improper dispute resolution procedure, so section 11.5 governs attorneys' fees for this action.

Section 1717 of the California Civil Code gives effect to this sort of attorneys' fees provision in a contract. Cal. Civ. Code § 1717(a). Indeed, even if a fee-shifting provision on its face applies only to a specific party, section 1717 requires that it be interpreted as awarding fees to the prevailing party. *Id.* The statute defines the "prevailing party" as "the party who recovered greater relief," and permits a court to "determine that there is no party prevailing on the contract for the purposes of [awarding fees]." *Id.* § 1717(b)(1).

3

JMR contends that fees for this action are governed not by section 11.5 of the Subcontract, but instead by either section 10.1.1 or section 9.1.1. According to JMR, neither of these provisions requires the Court to determine which party "prevailed." The Court disagrees that those provisions apply to the present dispute.

### 1. Section 10.1.1

Section 10.1.1 provides in relevant part that if HPS defaults on its obligations under the Subcontract, JMR may complete the remaining work itself or through additional subcontracts, "and charge the cost, including reasonable overhead, profit, attorneys' fees, costs and expenses to [HPS]." Subcontract §§ 10.1.1−10.1.2. JMR argues that because the Court found that HPS failed to adequately perform some of its obligations, this provision entitles JMR to recover its fees for this action. JMR Mot. at 2−4. HPS argues that this provision encompasses only "fees incurred to correct the work, not litigate thereafter." HPS Opp'n (dkt. 174) at 2. As an example of what would be covered, HPS suggests attorneys' fees for the "preparation or review of contracts needed for replacement subcontractors." *Id.*

The Court agrees with HPS's view of this clause. This narrower construction is not, as JMR contends, an arbitrary "temporal limitation." *See* JMR Reply (dkt. 177) at 3. Rather, the clause encompasses only the costs "necessary for the completion of the Subcontract Work." *See* Subcontract § 10.1.1. The fees contemplated by section 10.1.1 are those which make up part of the cost of completing the work, such as fees incurred in the process of securing a new subcontractor. The fees at issue here—fees incurred in a dispute between the parties to *recover* such costs—are governed by section 11.5.

### 2. Section 9.1.1

JMR also points to section 9.1.1 of the Subcontract, which provides in relevant part that "[HPS] shall indemnify [JMR] against, and save it harmless from any and all loss, damage, cost expenses and *attorney's fees* suffered or incurred on account of any breach by [HPS] of any provision or obligations of this Subcontract." Subcontract § 9.1.1 (emphasis added); *see* JMR Mot. at 5. JMR argues that because HPS breached the Subcontract by failing to meet a deadline for its portion of the work, *see* FFCL ¶¶ I.24, II.55, JMR's attorneys' fees in the present action fall

4

within the scope of section 9.1.1, and JMR may recover its fees regardless of which party prevailed. *See* JMR Mot. at 5.

A California appellate court construed identical contract language in *Continental Heller Corp. v. Amtech Mechanical Services, Inc.*, 53 Cal. App. 4th 500 (1997). The defendant subcontractor in that case argued that the indemnity provision applied to attorneys' fees incurred defending claims by other parties against the contractor resulting from the subcontractor's breach. *Id.* at 508. The court disagreed, and held that the indemnity provision allowed the plaintiff to recover fees for the plaintiff contractor's successful claim against the defendant subcontractor. *Id.* at 508−09. Significantly, however, that holding was based on the context of the contract. The court noted that the contract contained a separate indemnity provision governing "all loss, damage, etc., 'including attorney's fees' which 'arises out of or is in any way connected with the performance of work under this Subcontract.'" *Id.* at 508. The court determined that, read in context, the provision for fees "on account of any breach by the Subcontractor" would be redundant if it did not include the contractor's fees incurred in suing the subcontractor for breach. *See id.* at 508−09. The *Continental* opinion includes no indication that the contract in that case included any provision resembling section 11.5 of the Subcontract in this case.

The Subcontract here, as in *Continental*, includes a separate indemnity clause for "attorneys' fees . . . that may arise from the performance of the Subcontract Work." Subcontract § 9.1.1 (first paragraph). It also, however, includes section 11.5, which specifically governs the question of attorneys' fees in connection with a "dispute resolution process" for "any dispute arising out of or relating to this Agreement or its breach." *Id.* § 11.5. Because section 11.5 more clearly encompasses the dispute at issue in this litigation, the Court applies that provision, which awards fees to the "prevailing party," rather than section 9.1.1.

### 3. Civil Code Section 1717 Applies to Any Contractual Attorneys' Fees Clause

Even if sections 9.1.1 or 10.1.1 did apply, under California law those provisions would not bypass the need to determine which party, if any, prevailed. JMR's position that "Defendants are entitled to their fees and costs incurred in this case, *irrespective of any 'prevailing party' argument*," JMR Mot. at 2, wholly disregards the reciprocity required by section 1717 of the

5

California Civil Code. "Section 1717 was enacted to establish mutuality of remedy where contractual provision makes recovery of attorney's fees available for only one party." *Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124, 128 (1979). The California Supreme Court has held that "[e]very contractual attorney fees provision must be read in light of section 1717." *Scott Co. of Cal. v. Blount, Inc.*, 20 Cal. 4th 1103, 1113 (1999). Even where a contract "provides that attorney's fees and costs . . . shall be awarded . . . to *one* of the parties," the court must determine which party—if any—prevailed, and award fees to that party. Cal. Civ. Code § 1717 (emphasis added); *see also Scott Co.*, 20 Cal. 4th at 1109, 1113. Thus, although the Court finds that section 11.5 governs attorneys' fees incurred during this litigation, applying section 9.1.1 or 10.1.1 would not alter the outcome.

### B. Section 1717 Grants Courts Limited Discretion to Determine That No Party Is Entitled to Attorneys' Fees

Civil Code section 1717 provides that in considering motions for attorneys' fees in a contract case, "[t]he court may . . . "determine that there is no party prevailing on the contract for the purposes of this section," and thus no party entitled to an award of fees. Cal. Civ. Code § 1717(b)(1). This creates tension with section 1717's mandate that fees "*shall* be awarded" to the prevailing party, and that "the party prevailing on the contract *shall* be the party who recovered a greater relief." *Id.* §§ 1717(a), (b)(1) (emphasis added). California courts have examined the interaction between these provisions at length.[6]

In *Hsu v. Abbara*, the California Supreme Court held that a trial court does not have free reign in every case to determine that no party prevailed. 9 Cal. 4th 863, 876 (1995). "[W]hen a defendant defeats recovery by the plaintiff on the *only* contract claim in the action, the defendant is the party prevailing," and conversely, "a plaintiff who obtains *all* relief requested on the only contract claim in the action must be regarded as the party prevailing on the contract for purposes of attorney fees under section 1717." *Id.* (emphasis added). However, "the trial court [retains] a measure of discretion to find no prevailing party when the results of the litigation are mixed,"

---

[6] In light of the California courts' extensive review of section 1717, there is no need to resort to the opinions from courts in Florida, Maine, Rhode Island, Utah, and Guam cited in JMR's Motion. *See* JMR Mot. at 6–7, 10, 12.

6

including circumstances "when both parties seek relief, but neither prevails, or when the ostensibly prevailing party receives only a part of the relief sought." *Id.* at 875−76 (citation omitted). In such cases, "the trial court is to compare the relief awarded on the contract claim or claims with the parties' demands on those same claims and their litigation objectives as disclosed by the pleadings, trial briefs, opening statements, and similar sources." *Id.* at 876.

The California Supreme Court returned to the issue in *Scott Co.*, holding that "[w]hen a party obtains a simple, unqualified victory by completely prevailing on or defeating all contract claims in the action and the contract contains a provision for attorney fees, section 1717 entitles the successful party to recover reasonable attorney fees incurred in prosecution or defense of those claims." 20 Cal. 4th at 1109 (citing *Hsu*, 9 Cal. 4th at 877). The court compared that to a case where "neither party achieves a complete victory on all the contract claims, [and] it is within the discretion of the trial court to determine which party prevailed on the contract or whether, on balance, neither party prevailed sufficiently to justify an award of attorney fees." *Id.*[7]

In *De La Cuesta v. Benham*, 193 Cal. App. 4th 1287 (2011), a California appellate court thoroughly reviewed the case law addressing a court's discretion to find that no party prevailed. That court determined that a trial court has discretion in any case short of "complete victory" for one party, but can nevertheless abuse that discretion if the "result was *so* lopsided that . . . it was unreasonable to say that the [party seeking fees] was not the prevailing party." *Id.* at 1290, 1294. The court held that the trial court had abused its discretion in finding no prevailing party where the plaintiff landlord successfully repossessed his property and recovered roughly seventy percent of his monetary claims, and the defendant tenant recovered nothing on her counterclaims. *See id.* at 1299.

That one party obtained a net monetary recovery may be a significant factor, but is not dispositive. *See Sears v. Baccaglio*, 60 Cal. App. 4th 1136, 1156 (1998). "[I]n determining

---

[7] This analysis differs at least in form, if not in substance, from the test used to determine whether a party prevailed and is entitled to fees in suits under federal civil rights statutes. Under 42 U.S.C. § 1988, "a plaintiff who wins nominal damages is a prevailing party," but in such circumstances "the only reasonable fee is usually no fee at all." *See Farrar v. Hobby*, 506 U.S. 103, 112, 116 (1992).

litigation success, courts should respect substance rather than form, and to this extent should be guided by 'equitable considerations.'" *Hsu*, 9 Cal. 4th at 877 (emphasis omitted); *see also Berkla v. Corel Corp.*, 302 F.3d 909, 920 (9th Cir. 2002) ("[I]t is clear from *Hsu* that a court is entitled to look at more than the issue of liability in determining prevailing party status, and to evaluate litigation success in light of the party's overall demands and objectives"). One such consideration arises in cases where the parties exchanged settlement offers during litigation, because a party's offer may be relevant to determining its litigation objectives. *See Public Emps. Retirement Sys. v. Winston*, 209 Cal. App. 3d 205, 211 (1989) (instructing a trial court to consider the significance of a settlement offer on remand); *see also Ingram v. Oroudjian*, 647 F3d 925, 927 (9th Cir. 2011) (holding outside the context of section 1717 that a district court may "consider[] settlement negotiations for the purpose of deciding a reasonable attorney fee award").

### C. Application of Section 1717

The Court entered judgment for HPS, but also found that HPS could not recover on most of its PCO claims and that JMR prevailed on some of its counterclaims. This is not the sort of "complete victory" that would *compel* an award of fees to one party. *Cf. Scott Co.*, 20 Cal. 4th at 1109; *De La Cuesta*, 193 Cal. App. 4th at 1294. The Court therefore examines the parties' respective success on their claims and other relevant equitable considerations to determine which party, if any, should recover its attorneys' fees.

#### 1. HPS Obtained Greater Monetary Recovery

One might determine that HPS "prevailed" because it obtained a net judgment in its favor. Although this factor is not dispositive, it is significant: a trial court that disregards "a sizeable net monetary recovery[] would risk abuse of discretion under section 1717." *Sears*, 60 Cal. App. 4th at 1156.

Nearly all of the total amount due to HPS resulted from JMR withholding $325,508.72 from the agreed price for HPS's services. *See* FFCL ¶ 18. JMR argues that it was entitled to do so under sections 7.3.8 and 7.3.9 of the Subcontract. JMR Opp'n at 4. Section 7.3.8 permits JMR to deduct "any sums owed by [HPS] to [JMR]," as well as any amount necessary to protect JMR from claims by other parties resulting from HPS's breach or defective work. Subcontract § 7.3.8.

8

Section 7.3.9 permits JMR to withhold payment for reasons that include "[d]efective Subcontract Work not remedied to the satisfaction of [JMR]," "[i]nability . . . of [HPS] to complete the Subcontract work within the required time," "[d]amage to [JMR]," and "[u]nsatisfactory prosecution of the Subcontract Work." *Id.* §§ 7.3.9.1, 7.3.9.4–.6.

JMR argues that the Court should disregard the withholding, citing a Seventh Circuit decision where the panel found that an undisputed "account balance was never really part of the stakes in th[at] litigation." *Poteete v. Capital Eng'g , Inc.*, 185 F.3d 804, 807 (7th Cir. 1999); *see* JMR Opp'n (dkt. 173) at 4. *Poteete* is not on point. As HPS correctly notes, the plaintiff in that case could have simply claimed what was due without resorting to a "frivolous lawsuit." HPS Reply (dkt. 178) at 5 (quoting *Poteete*, 185 F.3d at 807). Here, HPS could not obtain the withheld payment without litigation.

Although the Subcontract allowed JMR to withhold or deduct amounts that HPS owed, including damages to JMR that resulted from HPS's breach, JMR overreached by withholding more than twice as much as it was entitled to. Thus, even after deducting damages for HPS's breach of the Subcontract, JMR failed to pay what it owed to HPS and instead forced HPS to file this lawsuit. In other words, one of HPS's "litigation objectives" was recovering the payment JMR wrongfully withheld. *See Hsu*, 9 Cal. 4th at 876. JMR provides no compelling argument or authority why the Court, in determining which party prevailed, should disregard JMR's overreach. If JMR was unsure of its damages and wished to minimize its risk of owing fees under section 11.5 of the Subcontract, it could have paid HPS in full and sued for breach.

Because the Court declines to disregard the amount HPS recovered for JMR's withholding, HPS achieved "greater relief," at least monetarily. *See* Cal. Civ. Code § 1717(b)(1). Even so, HPS prevailed on only 23% of the damages it sought at trial—$131,953.32 of $576,498.38—after offsetting JMR's successful counterclaims. The Court therefore considers whether other factors might tend to negate HPS's relative monetary success.

### 2. Other Equitable Considerations Favor HPS

Other factors also favor HPS. One such consideration is the total amount in controversy, including the claims on which the parties failed to recover. Taking into account not only the

1  claims that the parties successfully prosecuted, but also those that they successfully defended, HPS
2  calculates that JMR prevailed on only $471,351 of a total of $1,346,341 in controversy. HPS
3  Opp'n at 6. Setting aside JMR's withholding of payment—because including the withholding for
4  this purpose arguably double-counts a portion of JMR's counterclaims—and basing the amount in
5  controversy on the parties' post-trial claims detailed in the FFCL, the discrepancy is smaller, but
6  HPS still prevailed on more than half of the total. A large portion of JMR's shortfall stems from
7  its failure to establish the basis for its largest counterclaim: that HPS caused a delay in the ultimate
8  completion of the overall project. *See* FFCL at 39−48.

9  Another factor is the parties' settlement positions. HPS twice offered to settle the case for
10  a $100,000 payment to JMR and waiver of HPS's claims, including any claim to the funds JMR
11  withheld. *See* Potter Decl. (dkt. 171-2) ¶¶ 7, 11 & Ex. E. JMR's counteroffer would have
12  required HPS to pay $525,268. *Id.* ¶ 12 & Ex. F. JMR argues, without providing evidence, that
13  the parties later made other offers, but does not dispute HPS's account of the offers detailed here.
14  *See* JMR Opp'n at 3 n.1.[8] The Court may consider settlement positions as an "equitable
15  consideration" relevant to section 1717's prevailing party analysis. *Winston*, 209 Cal. App. 3d at
16  211; *see also Ingram*, 647 F3d at 927. Here, JMR's rejection of HPS's offer to pay $100,000 is
17  strong evidence that the judgment entered exceeded HPS's litigation objectives and fell short of
18  JMR's.

19                                                * * *

20  Because the net monetary recovery and other relevant factors favor HPS, the Court finds
21  that HPS "recovered a greater relief in the action," *see* Cal. Civ. Code § 1717(b)(1), and is entitled
22  to attorneys' fees as the prevailing party under section 11.5 of the Subcontract and section 1717 of
23  the Civil Code.

24  **D.    JMR Does Not Challenge the Reasonableness of HPS's Attorneys' Fees**
25  HPS claims attorneys' fees of $454,525. HPS Mot. at 9. It supports this claim with (1)
26  explanations of categories of work performed, *id.* at 10−14; McCartney Decl. ¶ 24; (2)

---

[8] HPS submitted declarations disputing JMR's account of the parties' later settlement positions. *See* McCartney Reply Decl. (dkt. 178-1) ¶¶ 3−4; Potter Reply Decl. (dkt. 178-2) ¶¶ 4−5.

declarations supporting the reasonableness of its attorneys' billing rates, Potter Decl. ¶¶ 13−14; McCartney Decl. ¶¶ 1−6, 18; and (3) a detailed compilation of its attorneys' billing records indicating the tasks completed as part of this litigation, McCartney Decl. Ex. 5.  JMR's Opposition to HPS's Motion discusses only the issue of which party is entitled to recover attorneys' fees, without addressing the reasonableness of the fees HPS seeks.  *See generally* JMR Opp'n.[9]  The Court therefore finds that JMR waived any objection to the reasonableness of HPS's attorneys' fees, and awards HPS its claimed fees in full.

### E. The Clerk's Taxation of Costs Stands

The Clerk entered a taxation of costs in favor of HPS.  Dkt. 179.  JMR's Motion was filed before the taxation was entered, and is not explicitly styled as an objection to the taxation.  Nevertheless, because JMR's Motion seeks both attorneys' fees and costs, it could perhaps be construed as a preemptive objection to the taxation of costs in favor of HPS.

Under Rule 54 of the Federal Rules of Civil Procedure "[i]n the event of a mixed judgment . . . it is within the discretion of a district court to require each party to bear its own costs." *Amarel v. Connell*, 102 F.3d 1494, 1523 (9th Cir. 1996).  However, the Rule creates a presumption that the "party in whose favor judgment is rendered is generally the prevailing party for purposes of awarding costs."  *Id.* (quoting *d'Hedouville v. Pioneer Hotel Co.*, 552 F.2d 886, 896 (9th Cir. 1977)).  Here, for the same reasons discussed above in the context of section 1717, the Court finds no reason to depart from the presumption that HPS is entitled to its costs.  The Clerk's taxation of costs therefore stands.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[9] The Court notes that JMR used less than six pages of the twenty-five permitted for an opposition brief, and thus had ample opportunity to address the reasonableness of HPS's fees if it had chosen to do so.  *See* Civ. L.R. 7-4(b); *see generally* JMR Opp'n.

## IV. CONCLUSION

For the reasons stated above, the Court GRANTS HPS's Motion and awards HPS attorneys' fees in the amount of $454,525.  JMR's Motion for Attorneys' Fees is DENIED.  To the extent that JMR's Motion could be construed as asking the Court to alter the Clerk's taxation of costs, that request is also DENIED.

**IT IS SO ORDERED.**

Dated: December 9, 2014

JOSEPH C. SPERO
United States Magistrate Judge